UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY WARGULA #6192,                           **REPORT AND**
                                                 **RECOMMENDATION**
                      Plaintiff,
                                                 08-CV-00280(S)(M)
v.

ERIE COUNTY SHERIFF DEPARTMENT,
ERIE COUNTY CORRECTIONAL FACILITY,
ERIE COUNTY,

                      Defendants.
_____

    This case was referred to me by Hon. William M. Skretny for supervision of pretrial proceedings, including preparation of a report and recommendation on dispositive motions [9].[1] Before me is defendants' unopposed motion for summary judgment [20]. For the following reasons, I recommend that defendants' motion be GRANTED.

## BACKGROUND

    Plaintiff commenced this 42 U.S.C. §1983 action *pro se*, alleging that he contracted a methicillin-resistant Staphylococcus aureus ("MRSA") infection while an inmate at the Erie County Correctional Facility ("ECCF"). His first cause of action alleges that he "was forced to endure the pain for two weeks before jails medical dept transferred me to ECMC (hospital), They (ECMC) cut my back to let the infection drain. Was told by the attending nurse and doctor I would need surgery to remove core once infection went away. When I informed the jails medical dept of what I was told by (ECMC) I was advised against the procedure. Told the core was removed, several times I asked different medical staff several different responses by

---

[1]   Bracketed references are to the CM/ECF docket entries.

all." Complaint [1], first cause of action. Plaintiff's second cause of action repeats the allegations of the first cause of action, but also appears to seek relief based on him contracting a MRSA infection. Id. Based on this conduct, plaintiff alleges that defendants were deliberately indifferent to his medical care in violation of Eighth Amendment and also appears to assert state law negligence claims.

Following the close of discovery, defendants moved for summary judgment on September 21, 2009 [20]. Despite being served with a copy of defendants' motion, the notice to *pro se* plaintiff as required by Local Rule 56.2, which cautioned him that his failure to respond to the motion may result in his complaint being dismissed without a trial, and the briefing schedule requiring his response by October 22, 2009 [23], plaintiff has failed to file any opposition to the motion.

## ANALYSIS

**A.      Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could

reasonably support the jury's verdict for the non-moving party.'" Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

However, "even unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" D.H. Blair & Co., Inc. v. Gottdiener, 462 F. 3d 95, 110 (2d Cir. 2006). Therefore, I must consider whether defendants have met their burden for obtaining summary judgment.

**B.     Plaintiff's Eighth Amendment Claims**

    **1.     Dismissal of the Erie County Sheriff's Department and ECCF**

Defendant moves to dismiss plaintiff's claim against the Erie County Sheriff's Department ("ECSD") and ECCF on the basis that they are not independent entities subject to suit. Defendants' Memorandum of Law [22], Point I.

"In New York, agencies of a municipality are not suable entities. The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted. This is so because, 'Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'" Omnipoint Communications, Inc. v. Town of LaGrange, __ F. Supp. 2d__, 2009 WL 2878010, *10 (S.D.N.Y. 2009). *See* Cash v. County of Erie, 2007 WL 2027844, *6 (W.D.N.Y. 2007) (Curtin, J.) (dismissing claims against Erie County Sheriff's Department). Therefore, I recommend that plaintiff's claims against ECSD and ECCF be dismissed.

### 2. Dismissal of Erie County

Defendants move to dismiss plaintiff's claims against Erie County, arguing that plaintiff has failed to allege or establish a policy or custom in order to establish liability against the County. Defendants' Memorandum of Law [22], Point I.

"A municipality cannot be held liable under §1983 on a *respondeat superior* theory . . . . Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691, 694 (1978). "Because *respondeat superior* liability is not permissible . . . the courts must apply rigorous standards of culpability and causation . . . to ensure that the indirect-causation theory not result in the municipality's being held liable solely for the actions of its employee." Jeffes v. Barnes, 208 F. 3d 49, 61 (2d Cir. 2000), cert. denied, 531 U.S. 813 (2000).

In order to hold a municipality liable under §1983, a plaintiff must "plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right". Batista v. Rodriguez, 702 F. 2d 393, 397 (2d Cir. 1983). Plaintiff's failure to plead or establish that his injuries resulted from a municipal policy or custom of deliberate indifference is fatal to his claim. *See* Mendez v. Monroe County Hospital, 2005 WL 1243317, *2 (W.D.N.Y. 2005) (Larimer, J.) ("Here, plaintiff does not contend that any of the alleged constitutional deprivations were caused by or occurred pursuant to an official custom or policy of Monroe County, and thus plaintiff has failed to state a §1983 claim against this defendant.").

Defendants argue that even if the alleged conduct occurred pursuant to a municipal custom or policy, plaintiff has failed to establish a claim of deliberate indifference under the Eighth Amendment. Defendants' Memorandum of Law [22], Point II. The "deliberate indifference" standard consists of both objective and subjective components. Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154 (1995). Under the *objective* component, the alleged medical need must be "sufficiently serious." Id. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F. 3d 698, 702 (2d Cir. 1998). "The medical condition does not have to occur immediately; it suffices if the condition presents itself 'in the next week or month or year.'" Moore v. McGinnis, 2004 WL 2958471, *6 (W.D.N.Y. 2004) (Siragusa, J.).

To satisfy the *subjective* component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F. 3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F. 3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and

disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff began his incarceration at the Erie County Holding Center ("ECHC") on January 29, 2008. At that time, a medical intake interview was completed and plaintiff requested to be seen by a doctor for medications. Defendants' Statement of Facts Not in Dispute [21], Ex. A, Bates No. 14. On January 29, 2008, plaintiff was referred to the County of Erie Forensic Mental Health Service which examined him on January 30, 2009. Id., Bates No. 80. ECHC's medical department conducted an initial evaluation of plaintiff on January 31, 2008. At that time, plaintiff was diagnosed with renal stones, prescribed pain killers and referred to Erie County Medical Center's ("ECMC") Urology Clinic. Id. On February 4 and 5, 2008, plaintiff signed up for sick calls for back pain related to his kidney stones. Id., Bates No. 81. He was seen by ECHC's medical staff on February 5, 2008, and it was noted that he had an appointment with the Urology Clinic the next day. Id.

On February 16, 2008, plaintiff was transferred to ECCF and a medical exam was conducted. Id. Bates No. 125. At that time, no medical problems were noted other than plaintiff's kidney stones. Id. On February 26, 2008, plaintiff was seen by ECCF's medical staff for a complaint of a back infection and was prescribed Bactrim, an antibiotic, which he received from February 29, 2008 through March 9, 2008. Id., Bates Nos. 87, 112. On March 3, 2008, plaintiff was seen by ECCF's medical staff, and it was noted that there was increased redness and discomfort from his back infection. Id., Bates No. 83. He was prescribed Motrin for his

discomfort. Id. Plaintiff was seen by the Urology Clinic on March 3 and 5, 2008, and prescribed Flomax and Lortab. Id., Bates Nos. 106-108, 117.

He was taken to ECMC's Emergency Department on March 5, 2008 for evaluation of the "hardened red area in middle of back". Id., Bates No. 109. Plaintiff was diagnosed with a back abscess, which was drained. Id., Bates Nos. 109-110 Cultures from plaintiff's back confirmed that he had a MRSA infection and that Bactrim was an appropriate medication to treat it. Id., Bates No. 115; Heidelberger Declaration [21], Ex. B, ¶6. Plaintiff was discharged from ECMC with instructions that he continue receiving Bactrim, "pain control as per facility", and "have packing changed in 2 days". Id., Bates No. 111. He was directed to return to ECMC if he experienced any new symptoms or his current symptoms worsened. Id.

On March 6, 2008, ECCF's medical staff continued plaintiff on Lortab and Bactrim and changed his dressings. Id., Bates No. 89. On March 13, 2008, plaintiff was seen by ECCF's medical staff, and it was noted that he was "healing well". Id., Bates No. 83. He was prescribed Pryridium, a urinary aesthetic, which he received from March 19, 2008 through April 19, 2008. Id., Bates Nos. 89, 113. Plaintiff was referred to ECMC on March 11, 2008, and he received a ureteral stent on March 13, 2008. Id., Bates Nos. 83, 102 The following day (March 14, 2008), plaintiff was in severe pain as a result of the stent placement and was sent to ECMC via ambulance for evaluation. Id., Bates No. 83. Plaintiff was examined by ECCF's medical staff on March 16, 2008 for continued urethra pain and it was noted that he would be referred to a physician. Id.

On March 25, 2008, plaintiff was seen by ECCF's medical staff, and it was noted that his back had healed. Id., Bates No. 84. At that time, plaintiff indicated that the "RPA said

he would have to have surgery to remove the 'core'". Id. The medical staff noted that the "discharge notes from ECMC did not indicate any further invasive treatment. . . . Stated that he was satisfied [with] medical care at ECCF". Id.

On April 3, 2008, plaintiff was referred to a physician for pain management, and the next day Motrin was ordered and he was referred to the Urology Clinic. Id., Bates No. 84. Plaintiff was seen at the Urology Clinic on April 9, 2008. Id., Bates No. 95. Plaintiff was released from ECCF on April 14, 2008. Id., Bates No. 3.

Even assuming that plaintiff's MRSA infection constitutes a "sufficiently serious" medical condition, I find that defendants have established that the County was not deliberately indifferent to this condition. Based on the record before me, plaintiff's allegation that he "was forced to endure the pain for two weeks before jails medical dept transferred [him] to ECMC" is unfounded. Complaint [1], first cause of action. Plaintiff was initially seen for complaints concerning his back on February 26, 2008 and was prescribed an antibiotic at that time. Defendants' Statement of Facts Not in Dispute [21], Ex. A. Bates No. 87. He was seen again on March 3, 2008, due to increased discomfort. Id., Bates No. 83. At that time, he was prescribed Motrin. Id. Two days later on March 5, 2008, plaintiff was taken to ECMC where his MRSA infection was diagnosed and treated. Id., Bates No. 109.

Plaintiff also alleges that he "was told by the attending nurse and doctor [at ECMC] I would need surgery to remove core once infection went away. When I informed the jails medical dept of what I was told by (ECMC) I was advised against the procedure." Complaint [1]. This allegation is not supported by the record. Id., Bates No. 84. While plaintiff did inform ECCF's medical staff that ECMC advised him that he would require surgery to

remove the "core", there is no indication that ECCF's medical staff advised him against this procedure. Id., Bates Nos. 84, 111. ECCF merely relied on ECMC's discharge instructions, which made no mention of this follow-up procedure, and continued to treat plaintiff's infection pursuant to ECMC's instructions until it was fully healed. In fact, the staff notes from ECCF indicate that plaintiff was 'satisfied [with] medical care at ECCF". Id., Bates No. 84.

Rather than suggesting indifference, the record demonstrates that plaintiff's complaints were addressed. "Deliberate indifference [will not] be found when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." Shire v. Greiner, 2007 WL 840472, *12 (S.D.N.Y. 2007). Instead, plaintiff must establish that defendants "acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference. He must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment." Tafari v. Stein, 2009 WL 331378, *6 (W.D.N.Y. 2009) (Scott, M.J.), reconsideration denied, 2009 WL 1322317, 2004 WL 1579530.

Even accepting the allegations of plaintiff's complaint as true, the record demonstrates that at the very most, ECMC's treatment plan constituted negligence or malpractice, but does not rise to the level of culpable recklessness. *See* Calloway v. Denane, 2009 WL 3064781, *4 (N.D.N.Y. 2009) ("Allegation of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness"). ECCF treated plaintiff's condition with antibiotics and pain relievers until he was transferred to ECMC when his condition did not improve. Upon discharge, ECCF followed ECMC's instructions and continued to treat plaintiff with antibiotics until the infection was healed.

Mindful that "determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients", Mendoza v. McGinnis, 2008 WL 4239760, *11 (N.D.N.Y. 2008), I do not find that any deliberate indifference can be inferred from the treatment plaintiff received.   Although plaintiff may question why ECCF did not have the "core" of his infection removed, "disagreements over treatment do not rise to the level of a Constitutional violation", Graham v. Gibson,  2007 WL 3541613, *5 (W.D.N.Y. 2007) (Siragusa, J.), as "the Constitution does not require that an inmate receive a particular course of treatment".  Tafari, supra, 2009 WL 331378, at *7.

Similarly, the fact that plaintiff contracted a MRSA infection, standing alone, does not support an Eighth Amendment deliberate indifference claim.  Plaintiff's complaint offers no allegations of the acts or omissions in his care and treatment that resulted in him contracting MRSA.  Moreover, as discussed above, the infection was timely treated and diagnosed.

Therefore, I recommend  that plaintiff's claims against the County be dismissed.

## C. Plaintiff's State Law Claims

Because I have recommended dismissal of  plaintiff's federal law claims, I decline to exercise supplemental jurisdiction over his related state law violations pursuant to 28 U.S.C. §1367(c).  *See* Marcus v. AT&T Corp., 138 F. 3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").   Therefore, I recommend that all of plaintiff's state claims be dismissed, without prejudice to their determination in State court.

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment [20] be GRANTED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the clerk of this court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the clerk of this court within 14 days after receipt of a copy of this Report and Recommendation.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

DATED: January 25, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge